1  KAREN P. HEWITT
   United States Attorney
2  STEWART M. YOUNG
   Assistant U.S. Attorney
3  California State Bar No. 234889
   United States Attorney's Office
4  Federal Office Building
   880 Front Street, Room 6293
5  San Diego, California  92101-8893
   Telephone: (619) 557-6228
6  Fax: (619) 557-6741
   Email: stewart.young@usdoj.gov
7
   Attorneys for Plaintiff
8  UNITED STATES OF AMERICA

9
                    UNITED STATES DISTRICT COURT
10
                  SOUTHERN DISTRICT OF CALIFORNIA
11

12  UNITED STATES OF AMERICA,          )    CRIMINAL CASE No. 3:08-CR-0019 LAB
                                       )
13                                     )    DATE:        January 22, 2008
                 Plaintiff,            )    TIME:        2 P.M.
14                                     )
                                       )    GOVERNMENT'S RESPONSE AND
15      v.                             )    OPPOSITION TO DEFENDANT'S MOTIONS
                                       )
16                                     )    [7-1]  DISMISS THE INDICTMENT DUE TO
    SALVADOR BARAJAS-CRUZ,             )           THE UNCONSTITUTIONALITY OF
17                                     )           THE CHARGING STATUTES;
                 Defendant.            )    [7-2]  DISMISS THE INDICTMENT DUE TO
18                                     )           MISINSTRUCTION OF THE GRAND
                                       )           JURY;
19                                     )    [7-3]  PRESERVE AND INSPECT EVIDENCE;
                                       )    [7-4]  COMPEL DISCOVERY;
20                                     )    [7-6]  SUPPRESS STATEMENTS; AND
                                       )    [7-7]  GRANT LEAVE TO FILE FURTHER
21  _____)           MOTIONS.

22                                          TOGETHER WITH A STATEMENT OF THE
                                            FACTS AND THE MEMORANDUM OF
23                                          POINTS AND AUTHORITIES, AND
                                            GOVERNMENT'S MOTIONS FOR:
24
                                            [1] RECIPROCAL DISCOVERY
25                                          _____

26          COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

27  KAREN P. HEWITT, United States Attorney, and Stewart M. Young, Assistant United States Attorney,

28  hereby files its Response and Opposition to Defendant's Motions to Dismiss Indictment Due to the

Unconstitutionality of the Charging Statues, to Dismiss the Indictment Due to Misinstruction of the Grand Jury, to Preserve and Inspect Evidence, to Compel Discovery, and its Motion for Reciprocal Discovery.  This response and motion is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

I

**STATEMENT OF THE CASE**

On January 2, 2008, the Government filed a two-count indictment charging Salvador Barajas-Cruz ("Defendant") with violating 21 U.S.C. §§ 952 and 960, importation of 13.22 kilograms of marijuana, and 21 U.S.C. § 841(a)(1), possession of 13.22 kilograms of marijuana with intent to distribute.   On January 3, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

II

**STATEMENT OF FACTS**

On October 29, 2007, at approximately 5:54 pm, Defendant entered the United States through the Calexico, California, West Port of Entry.  He was the driver and sole occupant of a 1991 white Ford Explorer with California license plates.  When he applied for entry into the United States, the defendant provided a valid I-551 card, and the CBP officer referred him to vehicle secondary after receiving a negative declaration.  .

In the secondary inspection lot, a Canine Enforcement Officer (CEO) and his Narcotic Detector Dog (NDD) were conducting operations on the cars in the area.  The NDD alerted to defendant's vehicle for the presence of a narcotic odor.  The CBP officer received a negative customs declaration from the defendant at that time.  Defendant then stated he purchased the vehicle approximately one month ago and was on his way to work in Brawley, California.

A subsequent search of the vehicle resulted in the discovery of a number of packages hidden inside the dashboard area of the vehicle.  A total of 17 packages were found totaling approximately 13.22 kilograms of a substance that field-tested positive for marijuana.

At approximately 9:08 p.m., on that same day, defendant was read his Constitutional rights in the Spanish language.  He stated that he understood these rights, waived those rights, and stated he was

willing to provide a statement.  This interview was recorded, and defendant signed a waiver form in the Spanish language.  During that interview, defendant made the following statements: Three weeks ago he met a man named "Guerro" at Casino 29, in Indio, California.  Guerro offered the defendant $500 to cross "mota."[1/]  The defendant declined at that time.  Three days after meeting Guerro, defendant was again contacted by Guerro and accepted his offer.  Defendant indicated to Guerro that he only wanted to work a little.  Guerro told defendant that was fine, but that they needed to find a vehicle to register in defendant's name.

Guerro instructed defendant to pick out a vehicle, and once defendant picked out that vehicle, Guerro sent someone to give defendant money for the vehicle.  That person also gave defendant a cellular telephone which he had in his possession at the border.  Defendant did not know the destination of the narcotics, but was told that he would be taking Highway 86 to Brawley.  Defendant stated this was his first smuggling venture.

### III

### THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES.

Defendant apparently advances the theory that the drug importation statutes violate the Fifth and Sixth Amendments under Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004), because the drug importation statutes do not require a jury to find the type and quantity of the controlled substance.  Such an argument would invariably would try to point out that the Supreme Court's decision in Harris v. United States, 536 U.S. 545 (2002), should undermine the analysis employed by the Ninth Circuit in United States v. Buckland, 289 F.3d 558, 564 (9th Cir. 2002) (en banc) (upholding constitutionality of 21 U.S.C. § 841), and United States v. Mendoza-Paz, 286 F.3d 1104 (9th Cir. 2002) (upholding constitutionality of 21 U.S.C. § 960).

Despite any such arguments, the Ninth Circuit has foreclosed this argument.  United States v. Navarro-Vargas, 408 F.3d 1184, 1209 (9th Cir. 2005) (Sections 841 and 960 are constitutional, even in

---

[1/]   Slang for "weed."  Also the name of a song by The Offspring.  See http://www.urbandictionary.com/define.php?term=mota

light of <u>Harris</u>), <u>cert. denied</u>, 126 S.Ct. 736 (2005).  Additionally, any requirement of further elements

that the Government must prove is barred by the cases discussed above, including <u>Apprendi</u>.

**IV**

**THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT DUE TO ALLEGED MISINSTRUCTION OF THE GRAND JURY ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES**

A.    The Grand Jury Instructions Were Not Faulty and the Indictment Should Not Be Dismissed.

1.    Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury

during its impanelment by District Judge Larry A. Burns on January 10, 2007.  [Memorandum of

Points and Authorities, pp.2-17 (hereinafter "Memorandum")[2/]  Although recognizing that the Ninth

Circuit in <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found

these two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond

the text of the approved instructions, and by so doing rendered them improper to the point that the

indictment should be dismissed.

In making his arguments concerning the grand jury instructions Defendant urges this Court to

dismiss the indictment on two separate basis relating to grand jury procedures both of which were

discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first attacked

instruction, Defendant urges this Court to dismiss the indictment by exercising its supervising

powers over grand jury procedures.  This is a practice the Supreme Court discourages as Defendant

acknowledges citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's

operational separateness from its constituting court, it should come as no surprise that we have been

reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury

procedure. ").  [<u>Id.</u>]  <u>Isgro</u> reiterated:

[A] district court may draw on its supervisory powers to dismiss an

---

[2/]    Defendant supplies a "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted.  [Appendix 1.]  To amplify the record herein, we are supplying a redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings.  [Appendix 2.]

1   indictment.  The supervisory powers doctrine "is premised on the inherent ability of
the federal courts to formulate procedural rules not specifically required by the
2   Constitution or Congress to supervise the administration of justice."  <u>Before it may
invoke this power, a court must first find that the defendant is actually prejudiced by</u>
3   <u>the misconduct.</u>  Absent such prejudice-that is, absent " 'grave' doubt that the
decision to indict was free from the substantial influence of [the misconduct]"-a
4   dismissal is not warranted.

5   974 F.2d at 1094 (Citation omitted, Emphasis added).  Concerning the second attacked instruction,

6   in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the

7   Constitution as a reason to dismiss the indictment.  Concerning that kind of a contention <u>Isgro</u> stated:

8       [A] court may dismiss an indictment if it perceives constitutional error that interferes
with the grand jury's independence and the integrity of the grand jury proceeding.
9       "Constitutional error is found where the 'structural protections of the grand jury have
been so compromised as to render the proceedings fundamentally unfair, allowing the
10      presumption of prejudice' to the defendant."  Constitutional error may also be found
"if [the] defendant can show a history of prosecutorial misconduct that is so
11      systematic and pervasive that it affects the fundamental fairness of the proceeding or
if the independence of the grand jury is substantially infringed."

12  974 F.2d at 1094 (Citation omitted)<u>3/</u>

13      The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

14          You cannot judge the wisdom of the criminal laws enacted by Congress, that
15      is, whether or not there should or should not be a federal law designating certain
activity as criminal.   That is to be determined by Congress and not by you.

16  408 F.3d at 1187, 1202.

17          The United States Attorney and his Assistant United States Attorneys will
18      provide you with important service in helping you to find your way when confronted
with complex legal problems.   It is entirely proper that you should receive this
19      assistance.  If past experience is any indication of what to expect in the future, then
you can expect candor, honesty, and good faith in matters presented by the
20      government attorneys.

21  408 F.3d at 1187, 1206.

22      Concerning the "wisdom of the criminal laws" instruction, the court stated it was

23  constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the

24  policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury

25

26

27      <u>3/</u>    In <u>Isgro</u> the defendants choose the abrogation of constitutional rights route when asserting
that prosecutors have a duty to present exculpatory evidence to grand juries.  They did not prevail.  974
28  F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the
dismissal of the indictment."  (relying on <u>Williams</u>)).

08-CR-0019LAB

1  nullification.'"[4/]  408 F.3d at 1203 (Footnote omitted).  "Furthermore, the grand jury has few tools for

2  informing itself of the policy or legal justification for the law;  it receives no briefs or arguments

3  from the parties.   The grand jury has little but its own visceral reaction on which to judge the

4  'wisdom of the law.'"  Id.

5       Concerning the "United States Attorney and his Assistant United States Attorneys"

6  instruction the court stated:

7       We also reject this final contention and hold that although this passage may
   include unnecessary language, it does not violate the Constitution.   The "candor,

8   honesty, and good faith" language, when read in the context of the instructions as a
    whole, does not violate the constitutional relationship between the prosecutor and

9   grand jury. . . . .  The instructions balance the praise for the government's attorney by
    informing the grand jurors that some have criticized the grand jury as a "mere rubber

10  stamp" to the prosecution and reminding them that the grand jury is "independent of
    the United States Attorney[.]"

11  408 F.3d at 1207.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand

12  jury of the presumption of regularity and good faith that the branches of government ordinarily afford

13  each other."  Id.

14       2.       The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

15       Concerning whether the new grand jurors should concern themselves with the wisdom of the

16  criminal laws enacted by Congress, Judge Burns' full instruction stated:

17       You understood from the questions and answers that a couple of people were excused,
    I think three in this case, because they could not adhere to the principle that I'm about

18  to tell you.

19       But it's not for you to judge the wisdom of the criminal laws enacted by
    congress; that is, whether or not there should be a federal law or should not be a

20   federal law designating certain activity is criminal is not up to you.  That's a judgment
    that congress makes.

21
         And if you disagree with the judgment made by congress, then your option is

22   not to say "Well I'm going to vote against indicting even though I think that the
    evidence is sufficient" or "I'm going to vote in favor of even though the evidence may

23   be insufficient."  Instead, your obligation is to  contact your congressman or advocate
    for a change in the laws, but not to bring your personal definition of what the law

24   ought to be and try to impose that through applying it in a grand jury setting.

25

26
   _____

27  [4/]      The Court acknowledged that as a matter of fact jury nullification does take place, and
   there is no way to control it.  "We recognize and do not discount that some grand jurors might in fact

28  vote to return a no bill because they regard the law as unwise at best or even unconstitutional.  For all
   the reasons we have discussed, there is no post hoc remedy for that;  the grand jury's motives are not
   open to examination."  408 F.3d at 1204 (Emphasis in original.)

1    Partial Transcript pp. 8-9.[5/]

2    Defendant acknowledges that in line with Navarro-Vargas, "Judge Burns instructed the grand

3    jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by

4    Congress; that is, whether or not there should be a federal law or should not be a federal law

5    designating certain activity [as] criminal is not up to you.'" [Memorandum p. 9.]  Defendant notes,

6    however, that   "[t]he instructions go beyond that, however, and tell the grand jurors that, should 'you

7    disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote

8    against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of

9    even though the evidence maybe insufficient.'" Id.  Defendant contends that this addition to the

10   approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors

11   disagree with a proposed prosecution." Id.  Defendant further contends that the flat prohibition was

12   preemptively reinforced by Judge Burns when he "referred to an instance in the grand juror selection

13   process in which he excused three potential jurors," which resulted in his "not only instruct[ing] the

14   grand jurors on his view of their discretion; [but his] enforc[ing] that view on pain of being excused

15   from service as a grand juror."[6/] Id.

16   In concocting his theory of why Judge Burns erred, Defendant posits that the expanded

17   instruction renders irrelevant the debate about what the word "should" means. Defendant contends,

18   "the instruction flatly bars the grand jury from declining to indict because they disagree with a

19   proposed prosecution."  This argument mixes-up two of the holdings in Navarro-Vargas in the hope

20   they will blend into one.  They do not.

21   Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom

22   of the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by

23   Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

24

25   _____

     [5/]    The Supplemental Transcript supplied herewith (Appendix 1) recounts the excusing of
26   the three individuals.  This transcript involves the voir dire portion of the grand jury selection process,
     and has been redacted,  to include redaction of the individual names, to provide only the relevant three
27   incidents wherein prospective grand jurors were excused.  Specifically, the pages of the Supplemental
     Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38,
28   line 9 - page 44, line 17.

     [6/]    See Appendix 1.

expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws.  As we will establish this reminder did not pressure the grand jurors to give up their discretion not to return an indictment.  Judge Burns' words cannot be parsed to say that they flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution because they do not say that.  That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[7/]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").  This other instruction bestows discretion on the grand jury not to indict.[8/]  In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer."  408 F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as follows:

----

[7/]    That instruction is not at issue here.  It read as follows:

[Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged.  To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[8/]    The court upheld the instruction stating:

This instruction does not violate the grand jury's independence.   The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.   As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir.2002) (Per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment.  408 F.3d at 1206.

08-CR-0019LAB

1    The function of the grand jury, in federal court at least, is to determine
2    probable cause. That's the simple formulation that I mentioned to a number of you
     during the jury selection process. Probable cause is just an analysis of whether a
3    crime was committed and there's a reasonable basis to believe that an whether a
     certain person is associated with the commission of that crime, committed it or helped
     commit it.

4    If the answer is yes, then as grand jurors your function is to find that the
5    probable cause is there, that the case has been substantiated, and it should move
     forward. If conscientiously, after listening to the evidence, you say "No, I can't form
6    a reasonable belief has anything to do with it, then your obligation, of course, would
     be to decline to indict, to turn the case away and not have it go forward.

7    Partial Transcript pp. 3-4.

8    Probable cause means that you have an honestly held conscientious belief and
9    that the belief is reasonable that a federal crime was committed and that the person to
     be indicted was somehow associated with the commission of that crime. Either they
10   committed it themselves or they helped someone commit it or they were part of a
     conspiracy, an illegal agreement, to commit that crime.

11   To put it another way, you should vote to indict when the evidence presented
12   to you is sufficiently strong to warrant a reasonable person to believe that the accused
     is probably guilty of the offense which is proposed.

13   Partial Transcript p. 23.

14   While the new grand jurors were told by Judge Burns that they could not question the

15   wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the

16   discretion not to return an indictment per Navarro-Vargas. Further, if a potential grand juror could

17   not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be

18   dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-

19   80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this indictment or any other

20   indictment by this Court exercising its supervisory powers.

21   Further, a reading of the dialogues between Judge Burns and the three excused jurors found

22   in the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual

23   decision, that those three individuals should not serve on the grand jury because of their views.

24   Judge Burns' reference back to those three colloquies cannot be construed as pressuring the

25   impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

26   Finally, even if there was an error, Defendant has not demonstrated he was actually

27   prejudiced thereby, a burden he has to bear. "Absent such prejudice-that is, absent 'grave' doubt that

28   the decision to indict was free from the substantial influence of [the misconduct]'-a dismissal is not

9

08-CR-0019LAB

1    warranted." <u>Isgro</u>, 974 F.2d at 1094.

2            3.      The Addition to the "United States Attorney and his Assistant United
                States Attorneys" Instruction Did Not Violate the Constitution

3    Concerning the new grand jurors' relationship to the United States Attorney and the Assistant

4    U.S. Attorneys, Judge Burns variously stated:

5        [T]here's a close association between the grand jury and the U.S. Attorney's Office.
           . . .
6        You'll work closely with the U.S. Attorney's Office in your investigation of cases.

7    Partial Transcript p. 11

8        [I]n my experience here in the over 20 years in this court, that kind of tension does not
           exist on a regular basis, that I can recall, between the U.S. Attorney and the grand
9          juries.  They generally work together.

10   Partial Transcript p. 12.

11           Now, again, this emphasizes the difference between the function of the grand
         jury and the trial jury.  You're all about probable cause.  If you think that there's
12       evidence out there that might cause you to say "well, I don't think probable cause
         exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in
13       most instances, the U.S. Attorneys are duty-bound to present evidence that cuts
         against what they may be asking you to do if they're aware of that evidence.
14

15   Partial Transcript p. 20.[9/]

16       As a practical matter, you will work closely with government lawyers.  The U.S.
         Attorney and the Assistant U.S. Attorneys will provide you with important services
17       and help you find your way when you're confronted with complex legal matters.  It's
         entirely proper that you should receive the assistance from the government lawyers.

18       But at the end of the day, the decision about whether a case goes forward and an
19       indictment should be returned is yours and yours alone.  If past experience is any
         indication of what to expect in the future, then you can expect that the U.S. Attorneys
20       that will appear in front of you will be candid, they'll be honest, that they'll act in
         good faith in all matters presented to you.

21   Partial Transcript pp. 26-27.

22           Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts

23   against what they may be asking you to do if they're aware of that evidence," Defendant proposes

24

25   _____

26   [9/]      Just prior to this instruction, Judge Burns had informed the grand jurors that:

27       [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown
         trial, you're likely in most cases not to hear the other side of the story, if there is another
28       side to the story.

     Partial transcript p. 19.

08-CR-0019LAB

that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would

present to them evidence that tended to undercut probable cause." [Memorandum p.6.] Defendant

then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect

that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and ...

they'll act in good faith in all matters presented to you.'" Id. From this lash-up Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor
> does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's
> reasoning, in a case in which no exculpatory evidence was presented, would proceed
> along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have
> presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there
> is none. Even if some exculpatory evidence were presented, a grand juror would
> necessarily presume that the evidence presented represents the universe of all
> available exculpatory evidence; if there was more, the duty-bound prosecutor would
> have presented it.
>
> The instructions therefore discourage investigation--if exculpatory evidence
> were out there, the prosecutor would present it, so investigation is a waste of time and
> provide additional support to every probable cause determination: i.e., this case may
> be week [sic], but I know that there is nothing on the other side of the equation
> because it was not presented. A grand jury so badly misguided is no grand jury at all
> under the Fifth Amendment.

[Memorandum p.16-17] (Emphasis added.)[10/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence

that cuts against what they may be asking you to do if they're aware of that evidence," is directly

contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no

obligation to consider all 'substantial exculpatory' evidence, we do not understand how the

prosecutor can be said to have a binding obligation to present it."[11/] (Emphasis added)). See also,

---

[10/]    The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994).

[11/]    Note that in Williams the Court established:

Respondent does not contend that the Fifth Amendment itself obliges the

1    United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the

2    government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because

3    prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing

4    Williams)) (Emphasis added).

5        However, the analysis does not stop there.  Prior to assuming his judicial duties, as this court

6    is no doubt intensely aware, Judge Burns was a member of the United States Attorney's Office, and

7    made appearances in front of the federal grand jury.[12]  As such (no doubt this is not a newsflash to

8    this particular court), he was undoubtedly aware of the provisions in the United States Attorneys'

9    Manual ("USAM").[13]  Specifically, it appears that he is aware of USAM Section 9-11.233 thereof

10   which reads:

11        In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held
        that the Federal courts' supervisory powers over the grand jury did not include the
12      power to make a rule allowing the dismissal of an otherwise valid indictment where
        the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It
13      is the policy of the Department of Justice, however, that when a prosecutor
        conducting a grand jury inquiry is personally aware of substantial evidence that
14      directly negates the guilt of a subject of the investigation, the prosecutor must present
        or otherwise disclose such evidence to the grand jury before seeking an indictment
15      against such a person. While a failure to follow the Department's policy should not
        result in dismissal of an indictment, appellate courts may refer violations of the policy
16      to the Office of Professional Responsibility for review.

17

18

19

─────────────────

20        prosecutor to disclose substantial exculpatory evidence in his possession to the grand
        jury.   Instead, building on our statement that the federal courts "may, within limits,
21      formulate procedural rules not specifically required by the Constitution or the Congress,"
        he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts'
22      "supervisory power."

23   504 U.S. at 45 (Citation omitted).  The Court concluded, "we conclude that courts have no authority to
     prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority
24   over their own proceedings." 504 U.S. at 55.  See also, United States v. Haynes, 216 F.3d 789, 797-98
     (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers
25   would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.
     974 F.2d at 1096.

26

27   [12]    He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12,
     14-16, 17-18.]

28   [13]    The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/
     usam/index.html

                                    12

(Emphasis added.)[14/]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ."  (Emphasis added.)[15/]

The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[16/]  If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no

---

[14/]    See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm
Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[15/]    See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm

Similarly, this new section does not bestow any procedural or substantive rights on defendants.

Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E".  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm

[16/]    Recall Judge Burns also told the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

"substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[17]  There is nothing wrong  in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir.  1992) the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything  to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[18]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was  unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that it stands between the government and the

---

[17]    Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

[18]    The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

08-CR-0019LAB

1    accused and is independent," which was also required by <u>Navarro-Vargas</u>. 408 F.3d at 1207. In this

2    context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally

3    defective requiring dismissal of this indictment or any indictment.

4    The "duty bound" statement constitutional contentions raised by Defendant do not indicate

5    that the "'structural protections of the grand jury have been so compromised as to render the

6    proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

7    "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

8    pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

9    grand jury is substantially infringed." <u>Isgro</u>, 974 F.2d at 1094 (Citation omitted). Therefore, this

10    indictment, or any other indictment, need not be dismissed.

11    Additionally, on October 11, 2007, Judge Moskowitz recently denied a similar motion

12    presented to him in <u>United States v. Manuel Martinez-Covarrubias</u>, Case 07-CR-491 BTM. And on

13    December 5, 2007, Judge Houston denied a similar motion presented to him in <u>United States v.</u>

14    <u>Diana Jimenez-Bermudez</u>, Case 07-1372 JAH. The United States concurs with a substantial portion

15    of the Judge Moskowitz decision, and concurs with the Judge Houston decision. While not

16    authorities for this Court, the United States believes the reasoning, especially of decision by Judge

17    Houston, are persuasive and attaches both orders as Attachments 3 and 4 for the Court's perusal.

**V**

18

19    **THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO**

20    **PRESERVE EVIDENCE AND INSPECT EVIDENCE ALONG WITH MEMORANDUM OF**

21    **POINTS AND AUTHORITIES.**

22    After issuance of a an order from the Court, the United States will preserve all evidence to which

23    Defendant is entitled to pursuant to the relevant discovery rules. However, the United States objects to

24    Defendant's blanket request to preserve all physical evidence.

25    The United States has, and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant

26    an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within

27    his possession, custody or control of the United States, and which is material to the preparation of

28

08-CR-0019LAB

1   Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were

2   obtained from or belong to Defendant, including photographs.  The United States has

3   made the evidence available to Defendant and Defendant's investigators and will comply with any request

4   for inspection.

5          The United States objects to a blanket order regarding re-weighing of the evidence.  Absent a

6   showing by the defendant regarding this request, the United States submits that such an order is not

7   necessary or appropriate.

8                                                     **VI**

9   **THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO**

10        **COMPEL DISCOVERY ALONG WITH MEMORANDUM OF POINTS AND**

11                                        **AUTHORITIES.**

12         The United States has and will continue to fully comply with its discovery obligations under

13  Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (19 U.S.C. § 3500), and Rule 16 of the

14  Federal Rules of Criminal Procedure.  The United States has already produced 43 pages of discovery

15  to defense counsel including investigative reports and Defendant's statements.  Nevertheless,

16  Defendant makes a series of discovery requests.  The following is the United States' response to

17  Defendant's various discovery requests.

18         1.      Statements of Defendant

19         The United States has already produced reports disclosing the substance of Defendant's oral

20  and written statements.  The United States will continue to produce discovery related to Defendant's

21  statements made in response to questions by agents.  Relevant oral statements of Defendant are

22  included in the reports already provided.

23         2.      Arrest Reports, Notes and Dispatch Tapes

24         The United States has provided the Defendant with all arrest reports. All case agent notes, if

25  they exist, will be preserved but not produced. To the United States' knowledge, no dispatch tapes

26  exist.

27

28

08-CR-0019LAB

3.    Brady Material

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976) to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.  As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality. [Citation omitted.]

Id. at 774-775.

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976), cert. denied, 429 U.S. 1074 (1977).  When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

4.    Sentencing Information

Defendant claims that the United States must disclose any information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963).  The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the

17

1   defendant.  In such case, the United States has not suppressed the evidence and consequently has no

2   Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

3          But even assuming Defendant does not already possess the information about factors which

4   might affect his guideline range, the United States would not be required to provide information

5   bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty

6   and prior to his sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir.

7   1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the

8   disclosure remains in value.").  Accordingly, Defendant's demand for this information is premature.

9          5.      Defendant's Prior Record

10         The United States will provide Defendant with a copy of his criminal record in accordance

11  with Federal Rule of Criminal Procedure 16(a)(1)(B), if such a record has not already been provided

12  to Defendant.  .

13         6.      Proposed 404(b) Evidence

14         Should the United States seek to introduce any similar act evidence pursuant to Federal Rules

15  of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use

16  of such evidence and information about such bad act at the time the United States' trial memorandum

17  is filed. However, to avoid any argument about the adequacy of notice, Defendant should be aware

18  that the United States pans to provide evidence at trial of Defendant's has a prior conviction in

19  Kansas for sale of narcotics as well as his presence on October 29, 2001, when a search warrant was

20  executed in Ontario, California. Although Defendant was not charged. 1.5 kilograms of

21  methamphetamine were seized. These facts prove, inter alia, Defendant's knowledge, intent and the

22  absence of mistake here.

23         7.      Evidence Seized

24         Other than the drugs and the car, which are obviously difficult to photocopy and produce in

25  standard discovery, copies of all seized evidence have been produced in discovery. The United States

26  has, and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon

27  reasonable notice, to examine, copy and inspect physical evidence which is within the possession,

28  custody or control of the United States, and which is material to the preparation of Defendant's

defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

    8.    Tangible Objects

Again, the United States is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all documents known or believed to exist, which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.

The United States has, and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

Finally, at the risk of redundancy, the United States has already and will continue to turn over documents that could be considered material under Brady.  Evidence is material under Brady only if there is a reasonable probability that had it been disclosed to the defense, the result of the proceeding would have been different.  United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

    9.    Bias or Motive to Lie

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant.  The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

    10.    Impeachment Evidence

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

    11.    Evidence of Criminal Investigation of Government Witness

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. The Government is under no obligation to turn over the criminal records or rap sheet of its potential witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976), cert. denied, 429 U.S. 1074 (1977).. The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

    12.    Evidence Affecting Perception

The United States is unaware of any evidence indicating that a prospective witness has a perception, recollection, communication, or truth telling problem.

    13.    Witnesses Addresses

The United States has provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the United States will provide Defendants with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The United States objects to any request that it provide a list of every witness to the crimes charged who will not be called as a United States witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendants. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per

curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

14.    Witnesses Favorable to Defendant

The United States objects to any request that it provide a list of every witness to the crimes charged who will not be called as a United States witness.  The United States has stated that it will comply with the request for its witness list before trial.  "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).  The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendants.  Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).  The United States will also comply with its discovery obligations regarding any exculpatory evidence that it might become aware of regarding the defendant.  But absent these obligations, the United States is unaware of any witness that may be favorable to the defendant.

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

15.    Statements Favorable to Defendant or Relevant to Any Defense Theory

The United States is unaware of any favorable statements to Defendant or statements relevant to any defense. If any appear, the United States will produce them in compliance with its ongoing discovery obligations. Of course, disclosure of the proposed defense would make this task far more manageable.

16.    Jencks Act Material

The Jencks Act, 18 U.S.C. § 3500, requires that, after a United States witness has testified on direct examination, the United States must give the Defendant any "statement" (as defined by the Jencks Act) in its possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks Act is (1) a written statement

1   made by the witness and signed or otherwise adopted or approved by him, (2) a substantially

2   verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement

3   by the witness before a grand jury. 18 U.S.C. § 3500(e).   If notes are read back to a witness to see

4   whether or not the government agent correctly understood what the witness was saying, that act

5   constitutes "adoption by the witness" for purposes of the Jencks Act.   United States v. Boshell, 952

6   F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).   While

7   the United States is only required to produce all Jencks Act material after the witness testifies, the

8   United States plans to provide most (if not all) Jencks Act material well in advance of trial to avoid

9   any needless delays.

10   Additionally, no witness who testified before the grand jury will testify at trial, so the United

11   States does not anticipate that it will have to provide any of the Grand Jury transcripts to Defendant.

12   17.   Giglio Information

13   As stated previously, the United States will comply with its obligations pursuant to Brady v.

14   Maryland, 373 U.S.  83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir.

15   1991), and Giglio v. United States, 405 U.S. 150 (1972).

16   18-20.  Discovery Related to Informants or Cooperating Witnesses

17   The United States is not aware of any informants or cooperating witnesses in this case. If the

18   Government determines that there is a confidential informant whose identity is "relevant and helpful

19   to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that

20   person's identity to the Court for in-chambers inspection.   See Roviaro v. United States, 353 U.S. 53,

21   60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

22   The United States has already stated it will comply with its Brady, Giglio, Jencks Act, and

23   further Rule 16 discovery obligations.  The United States will comply with the structure of Roviaro if

24   it determines that any confidential informant information is "relevant and helpful to the defense of

25   [the] accused, or is essential to the fair determination of a cause."   Roviaro, 353 U.S. at 60.

26   As the Court is aware, the Supreme Court has declined to adopt an absolute rule requiring

27   disclosure of an informant's identity whenever it is relevant or helpful to a defendant's case.   See

28   Roviaro v. United States, 353 U.S. at 62.  Indeed, as the D.C. Circuit stated in United States v.

Skeens, 449 F.2d 1066, 1071 (D.C. Cir.1971), a "heavy burden ... rests on an accused to establish that the identity of an informant is necessary to his defense." Id. at 1070. "Mere speculation" that an informant's testimony may assist the defendant is not sufficient to meet this burden.  United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir.1996).  In determining whether the Defendant has met this burden, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," all the while "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62.  The United States will comply with its Rovario obligations, but it also requests that any information provided to the Defendants be subject to in camera review by the Court.

21.    Personnel Records of Testifying Witnesses

Defendant has no right to discovery of these private personnel files. Screening will be done pursuant to the United States' Henthorn obligations but no disclosure of the actual files will be made.

22-23.  Scientific Tests and Expert Witnesses

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the expert witnesses' qualifications, the expert witnesses opinions and the bases and reasons for those opinions.

24.    Residual Request

As it is overbroad, the United States submits that such a request is not appropriate.  The United States will continue to comply with all of it outstanding discovery obligations discussed above.

**VII**

**RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

**STATEMENTS**

Defendant moves to suppress statements made by him to agents prior to his arrest and also after his written waiver of Miranda rights.  (See Def.'s Mot. at 22-25.)  No actual argument is made why these statements should, under the facts of this specific case, be suppressed. Furthermore, no

08-CR-0019LAB

1    required declaration has been filed to support the argument. Defendant also requests an evidentiary

2    hearing to establish the facts and to aid the Court in deciding his suppression motion; however, he

3    does not support his request with a declaration.  Accordingly, the United States believes that the

4    requirements for such a suppression hearing have not been met.  If the Court chooses to hold an

5    evidentiary hearing on Defendant's motion at a future date, the United States would prove that

6    Defendant's statements were voluntary and are, therefore, admissible.

7         1.     Defendant's Statements Made Prior to His Arrest Should Not Be Suppressed

8         Defendant argues that his statements made prior to his arrest were made while in custody.  The

9    Ninth Circuit has not articulated a bright-line rule for determining when an investigatory stop

10   constitutes an arrest.  Courts are instructed to considered the totality of the circumstances and whether

11   reasonable people would conclude they were under arrest.  See United States v. Alvarez, 899 F.2d

12   833, 836 (9th Cir. 1990).  However, routine biographical questions have been found by the Supreme

13   Court and the Ninth Circuit to be insufficient to trigger constitutional protections.  See United States

14   v. Brignoni-Ponce, 422 U.S. 873, 878-89 (1975); United States v. Gonzalez-Sandoval, 894 F.2d 1043,

15   1046 (9th Cir. 1990); United States v. Perez, 776 F.2d 797, 799 (9th Cir. 1985); see also United States

16   v. Galindo-Gallegos, 244 F.3d 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001).

17        Here, agents asked Defendant where he was going while he was in the secondary inspection

18   areas, and further asked him who owned the vehicle. This was manifestly proper procedure. Indeed, it

19   would be improper for the agents to begin placing people under arrest before such a baseline inquiry

20   was made.  Therefore, Defendant's responses should be wholly admissible.  See Pennsylvania v.

21   Muniz, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to Miranda

22   warnings during procedures "necessarily attendant to the police procedure [are] held by the court to be

23   legitimate" and admissible).  Following discovery of the narcotics, agents timely advised Defendant

24   that he was under arrest.  Defendant was also timely advised of his Miranda warnings after his arrest.

25   He further read through the Miranda warnings in Spanish, initialed each warning, and signed at the

26   bottom in agreement of waiving his Miranda rights.  Thus, all statements prior to Defendant's arrest

27   are admissible; and this Court should deny the motion to suppress any statements made in the field or

28   after his arrest.

1

2.    Absent Some Concrete Allegation of Error, Defendant's Post-Miranda Statements Do Not Warrant an Evidentiary Hearing.

2

3    Under Ninth Circuit and Southern District precedent, as well as Southern District Local

4    Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress

5    only when the defendant adduces specific facts sufficient to require the granting of the defendant's

6    motion.  See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his

7    motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district

8    court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp.

9    1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was

10    insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R.

11    47.1.  The local rule further provides that "the Court need not grant an evidentiary hearing where

    either party fails to properly support its motion for opposition."

12    No rights are infringed by the requirement of such a declaration.  Requiring a declaration from

13    a defendant in no way compromises defendant's constitutional rights, as declarations in support of a

14    motion to suppress cannot be used by the United States at trial over a defendant's objection.  See

15    Batiste, 868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to

16    suppress ); Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to Fifth Amendment motion to

17    suppress). Moreover, Defendant has as much information as the Government in regards to the

18    statements he made.  See Batiste, 868 F.2d at 1092.  At least in the context of motions to suppress

19    statements, which require police misconduct incurred by Defendant while in custody, Defendant

20    certainly should be able to provide the facts supporting the claim of misconduct. Finally, any

21    objection that 18 U.S.C. § 3501 requires an evidentiary hearing in every case is of no merit.  Section

22    3501 requires only that the Court make a pretrial determination of voluntariness "out of the presence

23    of the jury."  Nothing in section 3501 betrays any intent by Congress to alter the longstanding rule

24    vesting the form of proof on matters for the court in the discretion of the court.   Batiste, 868 F.2d at

25    1092 ("Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district

26    court.") (citation and quotation marks omitted).

27

28

25

### 3.    Adequate Proof to Support Rejection of a Motion to Suppress

The Ninth Circuit has expressly stated that a United States proffer based on the statement of facts attached to the complaint is alone adequate to defeat a motion to suppress where the defense fails to adduce specific and material facts.  See Batiste, 868 F.2d at 1092.  Moreover, the Ninth Circuit has held that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule.  See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991); United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); see also United States v. Walczak, 783 F. 2d 852, 857 (9th Cir. 1986) (holding that evidentiary hearings on a motion to suppress are required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to whether contested issues of fact exist).  Even if Defendant provides factual allegations, the Court may still deny an evidentiary hearing if the grounds for suppression consist solely of conclusory allegations of illegality.  See United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson did not abuse his discretion in denying a request for an evidentiary hearing where the appellant's declaration and points and authorities submitted in support of motion to suppress indicated no contested issues of fact).

As Defendant in this case has failed to provide declarations alleging specific and material facts, the Court would be within its discretion to deny Defendant's motion. Indeed, such a denial may properly be made based solely on the statement of facts attached to the complaint in this case, without any further showing by the United States.  Moreover, Defendant had an opportunity, in his moving papers, to proffer any facts alleging violations of his rights.  Such a discussion of caselaw and conclusory language, absent a discussion of the particular facts of this case, fails to generate a disputed factual issue requiring an evidentiary hearing.  See Howell, 231 F.3d at 623.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VIII

## NO OPPOSITION TO DEFENDANT'S REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

The United States does not object to the granting of leave to allow Defendant to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

# IX

## MOTION FOR RECIPROCAL DISCOVERY

The United States hereby moves for reciprocal discovery from the Defendant.  To date Defendant has not provided any.  The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendant permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which Defendant intends to introduce as evidence in their case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which Defendant intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness.  Because the United States will comply with Defendant's request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure.  The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

In addition, Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant.  This rule thus provides for the reciprocal production of <u>Jencks</u> statements.  The time frame established by the rule requires the statement to be provided after the witness has testified.  To expedite trial proceedings, the United

08-CR-0019LAB

States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court.  Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

## X

## CONCLUSION

For the above stated reasons, the United States respectfully submits its Response and Opposition to Defendant's Motions for Discovery, and requests that its Motion for Reciprocal Discovery be granted.

DATED: January 16, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney


s/Stewart M. Young
STEWART M. YOUNG
Assistant U.S. Attorney
Email: stewart.young@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 3:08-CR-0019 LAB |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| SALVADOR BARAJAS-CRUZ, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Stewart M. Young, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the United States' Response and Opposition to Defendant's Motions, as well as the Government's Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1. Jodi Denise Thorp, Esq.
     Jodithorp@thorplawoffice.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 16, 2008

     s/ *Stewart M. Young*
     Stewart M. Young

08-CR-0019LAB